IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| B.D., et al., | : | |
| *Plaintiffs*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DOWNINGTOWN AREA | : | No. 15-6375 |
| SCHOOL DISTRICT, et al. | : | |
| *Defendants*. | : | |

MEMORANDUM

PRATTER, J.                                                                                                                            JUNE 20, 2016

### I. INTRODUCTION

Is it any wonder that teachers and principals from time immemorial have admonished students: "No running in the halls!"? This case shows why the adults needed to heed the good-sense rule as well.

B.D., by and through his parents, Robert and Kristi Dommel[1], sues Defendants Downingtown Area School District ("School District"), George Read, and Kayla Greaves (the "Coaches") for injuries suffered by B.D. while purposefully running through the halls of his high school during track practice. The Defendants move to dismiss the Amended Complaint arguing that Plaintiffs have not stated a viable claim for relief under §1983 and that all Defendants are entitled to immunity under the Political Subdivision Tort Claims Act. The Dommels oppose the Motion.

Having concluded that the Dommels have plausibly alleged a §1983 claim against the Coaches under the state-created danger theory, a §1983 claim against the School District under *Monell*, and negligence claims against all Defendants which fall within the real property exception to the Political Subdivision Tort Claims Act, the Court denies the Motion.

---

[1] Robert and Kristi Dommel have also asserted claims on their own behalf.

1

## II.    ALLEGATIONS IN THE AMENDED COMPLAINT[2]

At the time of his alleged injury, B.D. was a sophomore at Downingtown High School East and was a member of the school track team, participating in middle-distance events. George Read was the head coach of the team and Kayla Greaves was the assistant coach. On November 26, 2013, Coach Read decided to hold track practice indoors due to inclement weather. This was typical for the Coaches to do when the weather was not suitable for outdoor practice.

Initially, the Coaches had the middle-distance runners (B.D.'s group) and the sprinters separated, with each group running a course made up of a route through various hallways within the school. Midway through the practice, however, Coach Greaves attempted to make the sprinters' course more difficult. The sprinters' new course intersected with the middle-distance runners' course, and the intersection of the two courses included blind corners. The blind intersection was not equipped with mirrors, pads, cones, signs, or any other safety equipment, and the floors were not designed or maintained in a way to allow for quick, evasive movement. While the hallways were equipped with video surveillance cameras, the cameras were not functioning on the day in question. When the sprinters' course was altered, the student athletes were not informed that the courses now intersected, and B.D. and the other student athletes were affirmatively instructed to run in the manner indicated by the Coaches.

After the modification of the sprinters' course, there were several "small collisions and/or near misses," of which the Coaches were aware. Am. Compl. ¶ 30. Shortly thereafter, B.D. was running on the course and approaching the blind intersection when he collided with sprinter

---

[2]  The factual summary is based on the allegations in the Amended Complaint, which the Court assumes to be true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

F.M., a high school junior who outweighed B.D. by approximately 60 pounds. The runners collided head-to-head, and various witnesses stated that B.D.'s head may also have struck the concrete floor of the hallway. B.D. was initially treated by an athletic trainer and then taken to a hospital. He suffered a depressed skull fracture and bi-frontal brain contusions, and was hospitalized for nearly one month.

The Amended Complaint alleges four counts. Counts I and II are negligence claims against the School District and the Coaches, respectively. While Counts III and IV are titled "State Created Danger 42 U.S.C. §1983" and "Violations of Fourteenth Amendment Due Process Clause for Injury to Human Dignity and Bodily Integrity Enforceable via 42 U.S.C. §1983," respectively, based on the briefing and representations made by counsel at oral argument, the claims are more accurately described as a claim against the Coaches for the deprivation of B.D.'s right to bodily integrity[3] and a *Monell* claim against the School District. The Court will treat them as such.

### III. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Although Federal Rule of Civil Procedure 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted)

---

[3] While the Amended Complaint mentions both a deprivation of B.D.'s right to bodily integrity and his right to human dignity, §1983 claims involving the right to human dignity have generally only been recognized in the prisoner context. *Dorley v. S. Fayette Twp. Sch. Dist.*, 129 F. Supp. 3d 220, 230 (W.D. Pa. 2015). Furthermore, Plaintiffs' counsel represented at oral argument that the two claims or theories are one and the same.

(alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). The question is not whether the claimant will ultimately prevail, but whether the complaint is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011).

When deciding a Rule 12(b)(6) motion to dismiss, the Court may look only to the facts alleged in the complaint and its attachments. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1251, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985). Likewise, the Court must accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

**IV.    DISCUSSION**

Because subject matter jurisdiction in this case is based on the Plaintiffs' federal claims, the Court will address those claims first.

    **A.    Deprivation of B.D.'s Right to Bodily Integrity**

To state a claim under 42 U.S.C. §1983, a plaintiff must plead a deprivation of a constitutional right and that the deprivation was caused by a person acting under the color of

4

state law.  *Phillips v. Cty. Of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008).  Under the Fourteenth Amendment, the state shall not "deprive any person of life, liberty or property, without due process of law."  U.S. Const. amend. XIV, §1.  Included within the protections of the Fourteenth Amendment is an individual's liberty interest in personal bodily integrity.  *Phillips*, 515 F.3d at 235.  While the Third Circuit Court of Appeals has "yet to expressly recognize or reject in a precedential opinion any claim which rises to the level of a substantive due process violation in regard to physical injuries caused by a fellow student in the interscholastic sports context," *Dorley*, 129 F. Supp. 3d at 230, several circuit courts have recognized substantive due process claims involving injuries arising out of high school athletics.  *Cf. Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 641 (3d Cir. 2015) (describing, in the context of a determination of whether defendants were entitled to qualified immunity, cases in which coaches physically beat student athletes, causing severe injuries).  At the district court level, cases within this circuit involving conduct less egregious than that discussed in *Spady* have survived motions to dismiss and motions for summary judgment.  *See Mann v. Palmerton Area Sch. Dist.*, 33 F. Supp. 3d 530 (M.D. Pa. 2014) (denying defendants' motion to dismiss when coach instructed plaintiff to return to the field after suffering a concussion); *Moeck v. Pleasant Valley Sch. Dist.*, 983 F. Supp. 2d 516 (M.D. Pa. 2013) (denying defendants' motion to dismiss when plaintiff was forced to wrestle a much larger opponent); *Sciotto v. Marple Newtown Sch. Dist.*, 81 F. Supp. 2d 559 (E.D. Pa. 1999) (denying defendants' motion for summary judgment when plaintiff was forced to wrestle an older, bigger, more skilled wrestler).

In this case, the Dommels acknowledge that a state actor did not directly violate B.D.'s right to bodily integrity.  Rather, they posit that the Coaches' actions significantly increased the risk that B.D. would be injured.  While the Fourteenth Amendment generally confers no

affirmative duty on the government to provide aid, *see DeShaney v. Winnebago Cty. Dep't of Soc. Serv.*, 489 U.S. 189, 195-96 (1989), the Third Circuit Court of Appeals has acknowledged the state-created danger theory as an exception to this general rule. *Kneipp v. Tedder*, 95 F.3d 1199, 1208 (3d Cir. 1996). In order to state a viable claim under the state-created danger theory, a plaintiff must show the following:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the [harm] to occur.

*Spady*, 800 F.3d at 638 (quoting *Kneipp*, 95 F.3d at 1208). An analysis of the state-created danger elements "necessitates a fact-intensive inquiry." *Id.*

### i. Foreseeability and Directness of the Harm

Under the first element, the plaintiff must show a level of awareness on the part of the defendants which equates to "actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *Phillips*, 515 F.3d at 238. Such an analysis "essentially asks whether the alleged misconduct and the harm caused were 'too attenuated' to justifiably hold the defendant liable." *D.N. ex rel. Nelson v. Snyder*, 608 F. Supp. 2d 615, 625 (M.D. Pa. 2009) (quoting *Phillips*, 515 F.3d at 238).

In this case, the school personnel assert that there was no actual knowledge of the risk that two runners would collide. They also argue that the collision between B.D. and F.M. was not foreseeable, as the Coaches had originally designed the course so that the middle-distance runners and sprinters would not overlap. They contend that the Coaches were not aware of any of the "small collisions and/or near misses" described in the Amended Complaint.

6

The Plaintiffs respond that the allegations in the Amended Complaint explicitly state that the Coaches were aware of the "small collisions and/or near misses." In addition, the Dommels point to the fact that the Coaches altered the course so that the two groups' routes overlapped, making a collision at least possible if not probable.

Assuming the truth of the allegations in the Amended Complaint, as the Court must at this stage of the litigation, the Dommels have satisfied the first element of their state-created danger claim because the alleged "small collisions and/or near misses" put the Coaches on notice of the potential for a serious collision. Indeed, experienced track coaches who are well aware that track is a non-contact sport would sufficiently be put on notice of a prospective harm to their student athletes if several of those student athletes had either collided or nearly collided due to overlapping courses. Ultimately, there is little attenuation between the alleged misconduct and the harm caused, as the potential harm one would expect to occur due to the creation of intersecting running paths – a collision between two runners – was exactly the type of harm which occurred.

### ii.     Intent/Culpability

The second element requires conduct which shocks the conscience. *M.U. v. Downingtown High School East*, 103 F. Supp. 3d 612, 621 (E.D. Pa. 2015) (citing *Miller v. City of Phila.*, 174 F.3d 368, 375 (3d Cir. 1999)). In cases such as this one, which do not involve a decision made with any sense of urgency, "[w]here state officials 'are afforded the luxury of a greater degree of deliberation and have time to make unhurried judgments,' deliberate indifference is sufficient to show conscience shocking behavior." *Id.* (quoting *Phillips*, 515 F.3d at 240). Deliberate indifference requires a showing of (1) an unusually serious risk of harm, (2)

the defendant's actual knowledge of that elevated risk, and (3) the defendant's failure to take steps to address that known, serious risk. *Sciotto*, 81 F. Supp. 2d at 566 n.10.

Defendants here argue that the Dommels have not sufficiently alleged conscience-shocking behavior because the Amended Complaint alleges merely negligent conduct, which does not amount to deliberate indifference. *See M.U.*, 103 F. Supp. 3d at 624. In *M.U.*, the court held that a soccer coach's failure to remove student athlete from a game after she received a blow to the head amounted to negligence, falling short of deliberate indifference. *Id.* In comparison, in *Sciotto*, the court found that a coach who instructed a student athlete to wrestle against an older, heavier, and more skilled alumnus had demonstrated a deliberate indifference to the student athlete's right to bodily integrity. 81 F. Supp. 2d at 566. The *Sciotto* court relied in part on evidence that the coach was aware of a prior injury to another student under similar circumstances. *Id. See also*, *Dorley v. S. Fayette Twp. Sch. Dist.*, 129 F. Supp. 3d 220, 234 (W.D. Pa. 2015) (concluding that an inference of deliberate indifference "might be drawn, for instance, from an allegation based on reasonable belief that the coaches had witnessed prior, serious injuries (or even near-injuries which would lead to serious harm) during this specific form of drill").

Plaintiffs argue that the Coaches in this case were aware of the unusually serious risk of harm, having designed a course where the middle-distance runners and sprinters crossed paths.[4] Additionally, the Coaches had actual knowledge of that risk due to the small collisions and near

---

[4] While Plaintiffs also argue that Defendants' failure to conduct track practice in accordance with Pennsylvania Interscholastic Athletic Association rules establishes the requisite culpable conduct necessary for the claim, §1983 claims are based on constitutional violations or violations of federal law. *See Phillips*, 515 F.3d at 235. Consequently, violations of state-imposed duties or standards of care are inapplicable to determining constitutional violations in the §1983 context. *See M.U.*, 103 F. Supp. 3d at 625 (citing *Baker v. McCollan*, 443 U.S. 137, 146 (1979)).

misses. In that sense, the Dommels analogize this case with *Sciotto*, in which the coach was aware of a prior injury which occurred under similar circumstances. Finally, the Plaintiffs assert that the Coaches failed to address the risks, allowing the runners to continue practicing even after the small collisions and near misses.

The Amended Complaint sufficiently alleges that the Coaches were deliberately indifferent towards the serious risk of two runners colliding with a risk of substantial harm. While athletes participating in contact sports such as football, wrestling, or soccer are equipped for, and prepared for, collisions with other athletes, the same cannot be said of track runners. Designing a set of courses which allows for the possibility or even probability that two runners will collide at a blind intersection while running at full speed creates an unusually serious risk of harm. That the Coaches allegedly viewed or were informed of minor collisions or near misses establishes that the Coaches had actual knowledge of that serious risk of harm. Finally, the Coaches' alleged failure to modify the courses after these minor collisions or near misses satisfies the third prong of the deliberate indifference analysis.

### iii.   Relationship Between the State and the Plaintiff

The Defendants concede that the Dommels have properly pled the requisite relationship between the Coaches and B.D.

### iv.   Affirmative Use of Authority

The fourth element requires a showing that a defendant's act was a "but-for" cause of the plaintiff's injury. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 433 (3d Cir. 2006). Additionally, the state actor must affirmatively use authority in a way that created the danger to the plaintiff or that rendered the plaintiff more vulnerable to danger than had the defendant not acted at all. *Mann*, 33 F. Supp. 3d at 539. "While the Third Circuit has 'acknowledged that the line between action

and inaction may not always be clear,' it also has 'never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised.'" *M.U.*, 103 F. Supp. 3d at 625-26 (quoting *Bright v. Westmoreland Cty.*, 443 F.3d 276, 282 (3d Cir. 2006)).

The Defendants argue that this case is analogous to cases in which plaintiffs have alleged a coach's failure to protect a student from a potential injury or a failure to provide proper care after the injury occurred. *See, e.g.*, *M.U.*, 103 F. Supp. 3d at 626 (holding that coach's failure to take player out of a game after a blow to the head did not amount to affirmative act); *Yatsko v. Berezwick*, No. 3:06CV2480, 2008 WL 2444503, at *5 (M.D. Pa. June 13, 2008) (holding that a coach who allegedly "did not prevent" the plaintiff from playing after she had received a head injury did not satisfy the fourth element).

The Plaintiffs respond by arguing that the Amended Complaint alleges that the runners were instructed to run in the fashion alleged, and that the Coaches acted affirmatively in designing the course so that the two groups of runners were on intersecting routes. The Plaintiffs in turn cite to cases in which the fourth element was satisfied because the coach affirmatively instructed the student to participate in a dangerous activity rather than simply failing to remove the plaintiff from a dangerous situation. *See Mann*, 33 F. Supp. 3d at 539 (denying defendants' motion to dismiss when coach instructed plaintiff to return to the field after suffering a concussion); *Sciotto*, 81 F. Supp. 2d at 567 (denying defendants' motion for summary judgment when plaintiff was affirmatively told to wrestle an older, bigger, more skilled wrestler). The distinction can be said to be the difference between putting a student in harm's way on the one hand, and the failure to move the student out of harm's way on the other.

While many of the allegations relating to the Defendants' failure to provide proper safety equipment do not satisfy the requirement of an affirmative act, the Coaches' design of the course and alleged instruction to the runners to run in such a fashion satisfies the fourth element in this case. Indeed, such conduct is more analogous to the affirmative instructions to student athletes present in *Mann* and *Sciotto* than merely failing to remove a student athlete from a dangerous situation, as was the case in *M.U.* and *Yatsko*. Here, there is no way to escape the fact that but for the Coaches' decision to design the intersecting courses and their instructions to the athletes to continue running, B.D. would not have been exposed to the unusually high risk of danger that he faced.

Having concluded that the Plaintiffs have satisfied the four elements of their claim asserted under the state-created danger theory, and consistent with the fact-intensive inquiry that the claim necessitates, the Court will deny the Defendants' Motion as to the Plaintiffs' §1983 claim against the Coaches for the deprivation of B.D.'s right to bodily integrity.

**B.    Municipal Liability**

In the Amended Complaint the Plaintiffs allege that "Defendants had knowledge of, and acquiesced to, the custom, practice and course of conduct of allowing track practice to be conducted in the hallways and staircases of the High School, and the associated dangers created thereby." Am. Compl. ¶ 34. Furthermore, the Dommels alleged that the School District ratified the Coaches' wrongful conduct. In identifying the final decisionmakers who knew of and acquiesced to this alleged custom or practice, the Plaintiffs allege that "Coaches Read and Greaves were granted final decision making authority regarding the protocols, policies, practices, procedures and customs to be followed and/or used during track practice." Alternatively, the Plaintiffs allege that the School District's failure to train or to warn the student athletes regarding

11

the dangers of running indoors on surfaces not fit for track practice amounts to a viable failure-to-train claim against the municipality.

The Defendants argue that the Amended Complaint fails to allege a viable claim against the School District under the standards set forth in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) and its progeny. In order to hold a municipality, or in this case a school district, liable for a constitutional violation under *Monell*, a plaintiff must allege that the violation of constitutional rights was caused by a policy, custom, or practice of the municipality. *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996). A policy exists when a "'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Watson v. Abington Tp.*, 478 F.3d 144, 155 (3d Cir. 2007) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). A custom may be established "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* at 155-56. In determining who has policymaking authority, the court should look to state law in order to "determine which official has final, unreviewable discretion to make a decision or take an action." *Id.* at 156. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). Alternatively, "an employee who lacks policymaking authority can still bind the municipality if a municipal policymaker delegated power to the employee or ratified his decision." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 264 (3d Cir. 2010).

The Defendants argue that no caselaw exists supporting the viability of a *Monell* claim based on a school district's knowledge of or acquiescence to a high school sports team holding practice indoors. In *M.U.*, the court held that "a lack of appropriate policies and procedures to assure that student athletes would be cared for responsibly by the coaching staff" was to be

construed as a failure-to-train theory and did not plausibly state a *Monell* claim against the school district. 103 F. Supp. 3d at 628 (internal quotation marks omitted). Here, the Defendants argue that the Plaintiffs have likewise stated nothing more than a deficient failure-to-train *Monell* claim.

While the Defendants are correct in arguing that the Dommels have failed to properly plead a claim premised on a failure-to-train theory,[5] the Amended Complaint nonetheless plausibly pleads a *Monell* claim against the School District. In *Dorley*, the court held that municipal liability was not properly pled when the complaint alleged the school district acquiesced in high school football coaches running dangerous practice drills. 129 F. Supp. 3d at 240-41. In allowing the plaintiff an opportunity to amend the complaint, however, the court stated that the amended complaint would either need to plead that the football coaches were factually and legally the final decisionmakers possessing unreviewable authority or that the final decisionmakers within the school district "directed, or specifically knew of and acquiesced to the challenged conduct." *Id.* at 241.

The Plaintiffs here have sufficiently pled a *Monell* claim by alleging that the Coaches were final decisionmakers, or alternatively, that their actions were ratified by the final decisionmaker within the School District. Unlike the allegations in *M.U.*, which focused on the lack of appropriate policies and procedures in place, the Amended Complaint identifies concrete policies or customs which are alleged to have caused the constitutional violation (e.g. the use of

---

[5] Under a failure-to-train theory, a plaintiff may hold a municipality liable if the plaintiff can show that the failure to train employees amounts to a "deliberate indifference to the rights of persons with whom the employees will come into contact" and that the deficiency in training caused the constitutional violation. *Thomas v. Cumberland Cty.*, 746 F.3d 217, 222 (3d Cir. 2014). Here, the Defendants rightly point out that the claim must be laid out as a failure to train the School District's employees rather than a failure to train or instruct the student athletes. Consequently, the Plaintiffs' claim must fail under such a theory. *See id.*

the school's hallways and staircases for activities outside their intended purposes). While they will eventually need to prove that the Coaches were factually and legally final decisionmakers with unreviewable discretion, or that their unlawful actions were ratified by a final decisionmaker, and that the alleged policies or customs caused the deprivation of B.D.'s constitutional rights, the claim as pled survives a motion to dismiss. Consequently, the Court will deny the Defendants' Motion to Dismiss as to the Plaintiffs' claim for municipal liability against the School District.

### C. Counts I and II: Negligence Claims

The Defendants argue that Counts I and II must be dismissed because all three Defendants are entitled to immunity under Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. C.S. §8541 ("PSTCA"), and the Plaintiffs' claims do not fall within any of the exceptions to immunity provided for in the act.

The PSTCA states, "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S. §8541. PSTCA immunity also applies to the Coaches in this case. *See Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006) (stating, "[m]unicipal employees, including school district employees, are generally immune from liability to the same extent as their employing agency, so long as the act committed was within the scope of the employee's employment"). The Dommels argue that the Defendants' conduct in this case falls within the real property exception of the PSTCA: "(b) The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency: . . . (3) *Real Property*. – The care, custody or control of real property in the possession of the local agency . . . ." 42 Pa. C.S. §8542. In determining whether an exception

14

applies, "the statutory exceptions set forth in Section 8542(b) must be narrowly construed given the Legislature's intent to insulate local agencies from liability." *Sakach v. City of Pittsburgh*, 687 A.2d 34, 36 (Pa. Commw. Ct. 1996).

The allegations in the Amended Complaint pertaining to Counts I and II can be generally be separated into three categories: (1) allegations pertaining to the Coaches' decision to practice indoors and how they configured the various running courses, (2) allegations that the Defendants failed to provide or use various forms of safety equipment, and (3) allegations related to the condition of the hallway floors and their suitability for track practice.

As to the first set of allegations – that the Coaches were negligent in running the practice in the manner in which they did – the Defendants correctly argue that such allegations do not fit within the real property exception. A mere failure to properly supervise activities on school grounds does not bring a plaintiff's claim within the exception. *See Wilson v. Norristown Area Sch. Dist.*, 783 A.2d 871 (Pa. Commw. Ct. 2001); *Mooney v. N. Penn Sch. Dist.*, 493 A.2d 795 (Pa. Commw. Ct. 1985). In *Wilson*, for example, the plaintiff sued a school district for injuries suffered when she fell down a flight of stairs. The injury occurred during a relay race conducted as part of a field hockey practice that was held indoors due to inclement weather. 783 A.2d at 872. The court held that the plaintiff's claims did not fall within the real property exception when the plaintiff's expert testified that there was nothing defective about the stairs, but rather that they were not suitable for relay races. *Id.* at 876. Similarly, in *Mooney*, the court held that the plaintiff's injuries did not fall within the real estate exception where the student was blindfolded as part of a simulation of the Iran hostage crisis and fell down a flight of stairs during the exercise. 493 A.2d at 796-97.

Plaintiffs respond by arguing that the plain language of the exception supports their position that the Defendants' conduct falls within the "care, custody or control of real property." The Dommels cite to two cases for the proposition that there does not need to be a defect in the property itself, but rather the exception can be applied to a defendant's conduct in caring for the property. *Grieff v. Reisinger*, 693 A.2d 195 (Pa. 1997) (holding that defendant's negligent handling of paint thinner which caused a fire that injured the plaintiff fell within the real estate exception); *Hanna v. W. Shore Sch. Dist.*, 717 A.2d 626 (Pa. Commw. Ct. 1998) (holding that the defendant's negligent mopping of an otherwise defect-free floor causing the plaintiff to slip and fall invoked the real estate exception). *Grieff* and *Hanna* are distinguishable, however, because the Plaintiffs in this case have not alleged that the Defendants were negligent in caring for the property, but rather that the Defendants were negligent in using the hallways for track practice.

Just as in *Wilson* and *Mooney*, the allegations in this case related to the manner in which the Coaches ran track practice cannot serve to bring the claims within the real property exception.

As to the second category of allegations – the failure to provide or use various safety equipment such as mirrors, signs, cones, surveillance cameras or even other runners to serve as lookouts – the Court concludes that while much of the hypothetical safety equipment, such as the cones, pads, and lookouts, fail to trigger the real property exception, *see Rieger v. Altoona Area Sch. Dist.*, 768 A.2d 912, 916 (Pa. Commw. Ct. 2001) (holding that a school's failure to place mats in the cheerleading practice area did not fall within the real property exception to immunity because the mats were not attached to the property), the allegations that the property was defective due to a lack of mirrors and signs may trigger the exception, and therefore the claims

should proceed to discovery. In *Blocker v. City of Phila.*, 763, A.2d 373 (Pa. 2000), the court held that only injuries suffered due to chattels considered to be part of the realty can provide the basis for a claim to fall within the real estate exception. *Id.* at 375. The court described the three possible types of chattels and how to classify them as either realty or personalty:

> Chattels used in connection with real estate are of three classes: First, those which are manifestly furniture, as distinguished from improvements, and not peculiarly fitted to the property with which they are used; these always remain personalty . . . . Second, those which are *so annexed to the property* that they cannot be removed without material injury to the real estate or to themselves; these are realty, even in the face of an expressed intention that they should be considered personalty . . . . Third, those which, although *physically connected with the real estate, are so affixed* as to be removable without destroying or materially injuring the chattels themselves, or the property to which they are annexed; these become part of the realty or remain personalty, *depending upon the intention of the parties at the time of the annexation;* in this class fall such chattels as boilers and machinery affixed for the use of an owner or tenant but readily removable . . . .

*Id.* (quoting *Clayton v. Lienhard*, 167 A. 321, 322 (Pa. 1933)).

The Defendants here argue that the Court would be left to speculate as to how to classify the hypothetical mirrors, cones, pads, signs or other safety equipment that the Plaintiffs allege should have been in place in the school hallways, and that all of the suggested equipment is analogous to the mats in *Rieger*.

In response, the Plaintiffs argue that the hypothetical safety materials should be treated as realty at the motion to dismiss stage where the Plaintiffs' allegations must be taken as true and inferences made in their favor. However, legal classifications of the hypothetical chattels do not constitute factual allegations which must be taken as true. Many of the hypothetical safety features – the pads, cones, and lookouts – are analogous to the mats in *Rieger* and cannot plausibly be classified as part of the real property.

Likewise, the allegations related to the surveillance cameras are insufficient to bring the claims within the real property exception. The Amended Complaint alleges that the cameras,

17

which were affixed to the real property, were not functioning.  The Plaintiffs argue that the defects in the cameras, which should be considered real property at this stage of the litigation, caused B.D.'s injury.  The Court, however, cannot see how B.D.'s injuries plausibly arose out of the defects in the surveillance cameras.  While the cameras, if functioning properly, might have provided footage of the incident that may have proved helpful in determining how the accident occurred, it is implausible that even fully functioning cameras would have had any effect on whether B.D. crashed into the other runner or the hallway floor.

The allegations in the Amended Complaint, however, extend to objects that could indeed be plausibly classified as realty.  Assuming that B.D.'s injuries arose out of defects in the property, in the form of a failure to properly maintain the property with mirrors and signs that would allow for the execution of safe, indoor track practices, then B.D. and his parents have plausibly plead a claim which falls within the real property exception.

Furthermore, the third category of allegations in the Amended Complaint, which relate directly to the flooring of the hallways, sufficiently brings the Dommels' claims within the real property exception.  The Amended Complaint alleges that the Defendants were negligent for "[u]sing the hallways to practice despite knowing the floors were not suitable for that purpose;" and "fail[ing] to request or assure the installation or maintenance of a flooring surface that was suitable for indoor track activity and allowed for sharp and immediate evasive measures."  Am. Compl. ¶¶ 70, 83. While the holding in *Wilson* appears to be applicable to these allegations as well, the Dommels attempt to distinguish that case.  They argue that its procedural posture, having been decided after the parties had completed discovery, makes it inapplicable to this motion to dismiss.  Further, the *Wilson* court concluded that the plaintiff's evidence "did not show that indoor running was a regular and permitted use of the real property."  *Id.* at 876 n.3.

18

Conversely, the Plaintiffs in this case alleged that indoor track practices were regular and permitted uses of the school hallways.

Additionally, these Plaintiffs attempt to analogize their case to the facts in *Gump v. Chartiers-Houston Sch. Dist.*, 558 A.2d 589 (Pa. Commw. Ct. 1989). In *Gump*, the student-plaintiff was injured when he unintentionally pushed his hand through a window pane of a hallway door while running through the school hallway for wrestling practice. *Id.* at 590. The court reversed the trial court's grant of immunity to the school district, holding that the plaintiff's injury was caused by a defect in the property (failure to use shatterproof glass) during the course of the regular and permitted use of the hallway for wrestling-related activities. *Id.* at 592.

In this case, the Plaintiffs similarly alleged that the school hallways were regularly and permissibly used for athletic practices. While B.D.'s initial collision in this case was with another runner rather than the real property itself, like the runner in *Gump*, the Amended Complaint also alleges that B.D.'s head struck the floor, potentially contributing to his injuries. Furthermore, the Amended Complaint alleges that the injury arose out of the defects in the flooring which did not allow for evasive maneuvering. Viewing the allegations in the Amended Complaint in the light most favorable to the Plaintiffs, the Court concludes that the Plaintiffs have plausibly stated a claim which falls within the real property exception of the PSTCA. Given that the Amended Complaint alleges that both the School District and the Coaches were responsible for and had a duty to design, maintain, and care for the hallways within the school such that they were suitable for the regular and permitted uses, the Court will deny the Defendants' Motion to Dismiss as to Counts I and II.

## V. CONCLUSION

For the foregoing reasons, the Court denies the Defendants' Motion to Dismiss.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE